Alex E. WILSON, Appellant,

v.

Fred G. STEVENOT, Trustee of Coastal Plywood & Timber Co., Debtor, Appellee.

No. 15583.

United States Court of Appeals Ninth Circuit.

Dec. 23, 1957.

Files & McMurchie, Sacramento, Cal., Clifton Hildebrand, Oakland, Cal., for appellant.

Orrick, Dahlquist, Herrington & Sutcliffe, Walter G. Olson, San Francisco, Cal., for appellee.

Before HEALY, CHAMBERS and BARNES, Circuit Judges.

HEALY, Circuit Judge.

Appellee was trustee in a Chapter X (11 U.S.C.A. § 501 et seq.) reorganization of Costal Plywood Company. He will hereafter generally be referred to as the trustee. Originally, in 1952, he undertook to formulate a plan of reorganization which would permit of the continued operation of Coastal. In 1953, however, his plan was rejected by Coastal's creditors, and he then sought to sell the company's assets to provide a fund for its creditors and stockholders. These assets consisted mainly of extensive timber holdings. In April of 1954 a sale of the holdings was consummated, with the approval of the court and of the creditors and stockholders, for a sum in excess of four million dollars. Following this, appellant, who is a licensed real estate broker, petitioned the court for an allowance of compensation for services in finding for the trustee a purchaser of the property. The amount asked was an allowance of 5% of the sales price or approximately $220,000. The trustee resisted the petition, and a trial before the district court was had, resulting in findings and a judgment adverse to appellant; hence this appeal.

The judgment below appears to have ample support in the record. Briefly, appellant's part in the history of the reorganization was as follows: In July of 1952, the trustee desired to sell three contracts owned by Coastal for the cutting of timber. These contracts had a time limit within which the timber was required to be removed. Appellant approached the trustee stating that he had a prospective buyer. The trustee informed him that the price would be at least $100,000, and stated further that the estate would not hire a broker to sell the contracts, nor would it pay a fee for their sale. This admonition was repeated in subsequent conversations. However, when the prospective purchaser made his offer it was for $100,000, but contained a condition that $5,000 be paid to appellant by the estate. This condition was imposed pursuant to agreement between appellant and the prospective purchaser. Preliminarily the trustee refused to meet the condition, but when the proposed purchaser insisted and demanded immediate action on the offer as made the trustee agreed. The offer, with the $5,000 provision, was submitted to the court and to the creditors and stockholders, and upon their approval the sale of the contracts was consummated.

Appellant thereafter kept in touch with the trustee, and when the original plan of reorganization was rejected in 1953 the trustee informed him, as well as numerous other interested real estate brokers, that the estate was desirous of selling the timber holdings of Coastal for an amount not less than $4,000,000. The trustee urged appellant and other brokers to find buyers and he cooperated with them in supplying upon request information and maps of the area. However, throughout these contacts appellant as well as the other brokers was informed by the trustee that the estate had no intention of hiring brokers or paying them fees—that they were to look to the

buyers for their commissions. So far as appellant was concerned this was made abundantly clear in a letter written to him by the trustee in July of 1953, which he admitted on the trial did no more than express in writing what the trustee had told him countless times.

In the course of a search for a purchaser appellant got in touch with one Steinberg, a local attorney, who was associated with certain wealthy interests referred to in the record as "the Sugarmans." Steinberg displayed immediate interest in the opportunity of purchasing the Coastal assets by himself and his associates, and accordingly contacted the Sugarmans. Thereafter, in July 1953 Steinberg made an agreement with appellant in which he promised to pay the latter $25,000 if a deal with the estate were consummated, this in consideration of appellant's having brought the opportunity to Steinberg's attention.

In the latter part of that same month the Sugarmans made an offer to the trustee of $3,750,000 for the property, which offer the trustee rejected. Further negotiations between the Sugarman interests and the trustee eventuated in the final offer and sale mentioned at the outset of this opinion.

■ Appellant concedes that he had neither an express agreement with the trustee nor prior authorization from the court to act for the estate, and that he made no claim for a fee or commission at the time the offer of the purchaser was submitted to and acted upon by the court and creditors. He appears to predicate his claim largely on some nebulous theory of implied or quasi contract. However, the trial court found that he was a mere volunteer, and as such entitled to no compensation. The determination in this respect has ample support in our holding in the cognate case of Newport v. Sampsell, 9 Cir., 233 F.2d 944, 946.[1]

■ The further contention is advanced that compensation is authorized by § 241 or § 242 of the Bankruptcy Act, 11 U.S.C.A. §§ 641–642. These sections provide for allowance to various specified classes of persons of compensation and expenses. Appellant, however, cannot bring himself within any of the enumerated classes unless he can qualify as an agent of the trustee; and since he was found to be a mere volunteer he obviously cannot so qualify.

Finally, appellant cites the Sixth Circuit case of Berman v. Palmetto Apartments Corp., 153 F.2d 192, as bolstering his case. The decision in Berman was predicated on facts and circumstances not present here. And in view of our decision in Newport v. Sampsell, supra, no useful purpose would be served by enlarging upon it.

Affirmed.

1. There it was held that one who performed services for the trustee and debtor, but without prior court authorization, was as a matter of law a volunteer, and thus entitled to no compensation.